## Riley Estate

*Strong, Sullivan, Saylor & Ferguson,* for petitioner.

*Warren S. Spalding,* for respondent.

*John A. Eichman, 3rd,* for other parties in interest.

KLEIN, P. J., April 24, 1957.—On or about January 22, 1957, Francis W. Sullivan, a highly respected member of our bar, called on me, in my capacity as president judge of the orphans' court, to discuss a problem, which was disturbing him, concerning Joseph L. Riley, respondent, who had been Mr. Sullivan's friend and client for many years.

Mr. Sullivan informed me that Mr. Riley was a man in his late seventies, who resided in Philadelphia most of his life. He was admitted to the Pennsylvania Hospital in Philadelphia for treatment in October of 1956, and then temporarily resided with Elizabeth R. Phillips of Clementon, N. J., who claimed to be a daughter by adoption. Mr. Sullivan stated that he knew Mrs. Phillips was raised by Mr. Riley and his wife, but did not know whether she had been formally adopted. Respondent remained with Mrs. Phillips until he was admitted to the Jefferson Hospital in Philadelphia on December 9, 1956, where he underwent a prostatectomy. On or about January 15, 1957, while respondent was still a patient at the Jefferson Hospital, Mr. Sullivan was advised by Dr. Theodore R. Fetter, respondent's physician, that respondent was confused, irrational and gave evidence of senile psychosis, and that he should remain in the hospital for further treatment for a troublesome bladder condition. Contrary to Dr. Fetter's advice and recommendation, and in defiance thereof, on January 17, 1957, Mrs. Phillips removed respondent from the hospital and took him to her home in New Jersey.

Mr. Sullivan advised me that he had in his custody two deposit books on the Philadelphia Saving Fund Society, belonging to respondent, in which sums in excess of $30,000 were deposited. Mr. Sullivan also had in his possession respondent's will which he had prepared and by the terms of which Mrs. Phillips, as well as Dolores R. Peters and June R. Amandola, nieces of respondent's deceased wife, who were also raised by the Rileys, would receive substantial benefits.

On January 21, 1957, Mr. Sullivan received a letter, purporting to have been signed by Joseph L. Riley, but written by some other person, which was the occasion of his visit to see me. The letter reads as follows:

"January 17, 1957
"Dear Mr. Sullivan:
"Will you please return my bank book as there are some bills that have to be paid, also the will that I don't remember signing & also the bill for your services, thank you.

"Joseph L. Riley."

In view of these circumstances, Mr. Sullivan was greatly concerned for the welfare of his client and the safeguarding of his property. He believed that he might easily become the victim of designing persons, but was reluctant to take any action which could be misconstrued by respondent, or by anyone else. He, therefore, sought advice and direction from the court. After consultation with my colleagues, I directed Mr. Sullivan, as an officer of the court, to file a petition for a citation to show cause why the said Joseph L. Riley should not be adjudged an incompetent and a guardian appointed to conserve his estate. I directed, further, that notice of the filing of the petition be given to Elizabeth R. Phillips, the alleged adopted daughter, and to Dolores R. Peters and June R. Amandola, the nieces by marriage.

As the result, a hearing was held before me on March 11, 1957, at which time Warren S. Spalding and Blaine E. Kephart appeared for respondent, and John E. Eichman, 3rd, appeared for June Amandola and Dolores R. Peters, and for Thomas Riley, respondent's sole surviving brother, who also was present.

At this hearing, Mr. Spalding established that Elizabeth R. Phillips had been formally adopted by respondent on November 5, 1920, by decree of the Court of Common Pleas No. 1 of Philadelphia County, as of September term, 1920, no. 7779.

Mr. Riley appeared in his own behalf. He is an aged man, obviously sick and nervous. His memory

was uncertain and his thinking processes had obviously been greatly impaired. He is suffering from arteriosclerotic paralysis agitans, an advanced form of Parkinson's disease. However, the confused delirious reaction which followed the prostatic operation appeared to have subsided substantially.

Dr. Baldwin Longstreth Keyes, professor of psychiatry and head of the psychiatric department of Jefferson Medical College, appeared as a witness for respondent. Doctor Keyes testified that he examined respondent on March 1, 1957, and made a complete physical and neurological examination of him and that he believed respondent to be mentally competent to take care of his own affairs.

The hearing was continued in order to enable Mr. Eichman to study the situation and advise his clients concerning the position they should take in the matter.

At the continued hearing which was held on April 4, 1957, Mr. Eichman appeared and advised the court that his clients did not wish to proceed with the petition. He stated that respondent was at that time a patient at the Cooper Hospital in New Jersey and was visited by Mrs. Amandola. Mr. Eichman stated: ". . . She was informed that he was there for the purpose of removing stones from the bladder. She spoke to him. He was extremely friendly. She said he was clearer than he had been for some time—perhaps a year or two. *He apparently had no recollection or gave no evidence of recalling the previous hearing in this matter* and seemed satisfied with things as they were. She said the only thing she noticed about him was that he called Mrs. Phillips Min, which was his wife's name, but otherwise, he was perfectly clear."

Respondent's rehospitalization, and his failure to remember so momentous an occasion in his life as the hearing in the proceedings to have him declared an

incompetent, which had taken place several weeks previously, casts serious doubts upon his competency. Certainly his severe debilitation and extreme weakness suggests that it would be difficult for him to resist the importunities of designing persons. However, Joseph L. Riley, respondent, and all of his relatives and all other persons, who might have an interest in his estate, have requested that respondent should not be adjudged an incompetent and that a guardian should not be appointed for his estate. The hearing judge therefore is of opinion that he should, under the circumstances, dismiss the petition as the interests of respondent appear to be reasonably well protected for the time being, all interested persons having been alerted to the situation.

The oath administered to lawyers upon their admission to practice recites, inter alia:

". . . that you will behave yourself as an attorney within the court, according to the best of your learning and ability, with all true fidelity to the court as well as the client, . . ."

What is a lawyer to do under the circumstances which confronted Mr. Sullivan in this case?

Section 301 of the Incompetents' Estates Act of June 28, 1951, P. L. 612, applicable to persons domiciled in Philadelphia County and to nonresidents having assets in the county, provides, inter alia, that:

". . . The petitioner may be the alleged incompetent's spouse, a relative, a creditor, a debtor, or, any person interested in the alleged incompetent's welfare. . . ."

It seems clear beyond question that a person's lawyer has the right, under the broad language of the statute, to file a petition to protect a client's interests.

It may well prove both embarrassing and unpleasant for a member of the bar to institute incompetency

proceedings against a friend who is also his client. On the other hand, can a lawyer, in good conscience, refrain from taking some action when an aged and confused client, recovering from serious surgery, is being taken out of the jurisdiction contrary to the advice of his physician, particularly when he has in his own possession the client's will under which various persons other than the one who had him in charge receive substantial benefits.

Although Mr. Sullivan is an experienced lawyer, he is not a trained psychiatrist. If he were to institute proceedings on his own motion, and the client were to make sufficient recovery, as appears possible in the present borderline case, to bar the entry of a decree adjudging him an incompetent, he would in all likelihood lose a valued friend and client.

It seems to us that the course followed by Mr. Sullivan is in harmony with the best tradition of the Philadelphia bar. He submitted his problem to the judges of a court of competent jurisdiction and complied fully with their suggestions and directions. Mr. Sullivan is to be commended for the courageous manner in which he endeavored to protect his client's interests under difficult and trying conditions.

PER CURIAM, April 24, 1957.—We are all in agreement with the conclusion of the hearing judge for the reasons set forth in his opinion. We accordingly enter the following

### Decree

And now, April 24, 1957, the prayer of the petition to adjudge Joseph L. Riley an incompetent and to appoint a guardian of his estate is dismissed.

The costs and expenses incurred by Francis W. Sullivan in connection with these proceedings are to be borne by Joseph L. Riley, respondent.